ARCHIBALD MCNICHOL, administrator, *vs.* HENRY F. EATON.

Washington.   Opinion April 7, 1885.

*Administrators. Trespass and waste. Insolvent estates. R. S., 1871, c. 66, § 20, c. 95, § 12. Cutting timber from wild lands.*

In order that an administrator may sustain an action under R. S., 1871, c. 66, § 20, for trespass or waste upon the real estate of his intestate, he must show that the estate he represents is actually insolvent.

Where the last domicil of an intestate was in New Brunswick, it is presumed that the principal assets and principal administration would be there; and the actual insolvency of the estate could be proved only by the aid of the records of the court having jurisdiction of such administration.

An administrator is bound to know the last domicil of his intestate, the place where the assets are presumed to be, and where the principal administration should be.

The cutting of timber from wild lands in a careful and prudent manner, keeping in view the future value of the land as well as the present income, is not waste within the meaning of R. S., 1871, c. 66, § 20, or c. 95, § 12.

ON REPORT.

Trespass, by the administrator of the estate of Monroe Hill, for cutting and carrying away timber from the timber lands of the intestate by one holding a conveyance of the same from the heirs of the intestate.   The writ was dated April 7, 1881.

The material facts are sufficiently stated in the opinion.

*A. McNichol,* for the plaintiff.

In *Bates* v. *Avery*, 59 Maine, 354, the court say an administrator may recover damages in an action of trespass of a person committing waste or trespass on the lands of the deceased when the estate is insolvent.   R. S., c. 66, § 20.   This action is based upon precisely the same facts as existed in that case.   In that case, and in this, trespass was committed after the death of the intestate and before the appointment of the administrator.

It is contended that insolvency is not proved in this case because no administration is shown in New Brunswick.   The obvious reason is that there was nothing to administer.   Surely the plaintiff is not bound to prove a negative nor was any one bound to administer in New Brunswick when no representation

could be made that the deceased left estate there. It would have been a useless expense.

The records of the probate court under which the plaintiff derives his authority are surely conclusive evidence as to the insolvency of the estate. *Bates* v. *Avery*, 59 Maine, 354.

*Harvey and Gardner*, for the defendant.

DANFORTH, J.   If this action is maintainable it must be by virtue of R. S., 1871, c. 66, § 20, which provides that, "when an administrator commits waste or trespass . . on real estate of his intestate insolvent, he is liable to account for treble the amount of damage.   He may recover damages, in an action of trespass, of a person committing the same, to be accounted for as assets, although such person is heir or devisee of the estate."   In ch. 95, § 12 of the same revision it is provided that when an heir after the estate is represented insolvent and before the real estate is sold for payment of debts, or before all the debts are paid, "removes or injures any buildings or trees, except what is needed for fuel or repairs, or commits any strip or waste on such estate, he shall forfeit treble the amount of damages, to be recovered by the executor or administrator in an action of trespass."   Both of these sections had their origin in ch. 191, § 4, of the acts of 1835.   Before the passage of the last named act the administrator had no claim in or control over the real estate of his intestate except the right to sell under a license when necessary to pay debts.   No liability for waste rested upon the heir and when any was committed, the right of action vested in him alone. *Fuller* v. *Young*, 10 Maine, 365 ; *Moody* v. *Moody*, 15 Maine, 205.   Hence, the statute being in derogation of the common law, its meaning cannot be extended beyond what a fair construction of its terms requires.

The title of the plaintiff's intestate to the real estate upon which the alleged trespass or waste was committed is not questioned.   The defendant in what he did justifies under a license from the owner whose title is derived from the heir of the intestate ; therefore he stands in the place of and represents the heir. But for the statute he has all the rights of an owner except the

naked right to sell existing in the administrator. The burden of proof rests upon the plaintiff to bring his case within the provisions of the statute.

The first question raised is whether the defendant is liable for waste committed before the estate was represented insolvent. By the act of 1835 the heirs were in express terms made liable only for waste committed after a representation of insolvency and before the land was sold for the payment of debts, or the debts actually paid, and then only in case the estate should be "absolutely insolvent" and they were liable for treble damages. By the revision of 1841, this section was divided. In ch. 109, § 37, the executor or administrator, whether an heir or devisee or not, if he shall commit such waste or trespass upon any real estate, as is described ch. 129, § 15, is made liable to treble damage and is given authority to prosecute actions of trespass against any persons committing such waste, whether they be heirs, or devisees or not, and the damages so recovered shall be accounted for as assets. In c. 129, § 15, we find the same provision as in the first act as to the time of committing the waste. "If the heirs or devisees shall between the time of the respresentation of insolvency and the sale or payment of the debts commit waste such as is there described he shall forfeit and pay treble the value thereof." In the subsequent revision these sections though slightly changed in phraseology remain the same in meaning unless changed by the omission in the earlier section in the revision of 1841, of the reference to the later one. It would seem that in the case of an heir or devisee the waste must be after the representation of insolvency and very good reasons may be given why it should be so. But upon this point we make no decision as it is not necessary to the case.

In any event the heir can only be liable in case the estate is proved to be insolvent. This term is frequently, perhaps commonly applied to estates in process of settlement under a representation of insolvency either by an administrator, or in the hands of an assignee without regard to the final result as to its ability to pay all its debts, or otherwise. But we may well suppose that under the statute upon which this action rests the

word is used in its more literal and perhaps more correct meaning, an absolute insufficiency to pay all its debts. In this case it is immaterial in which sense it is used; for, if in the former the action must fail for at the time of the alleged waste the estate had not been represented insolvent and was not therefore in that sense an insolvent estate. If in the latter sense as we hold it is, the action must equally fail for there is no proof of such insolvency. In *Bates* v. *Avery*, 59 Maine, 354, in the opinion of the court WALTON, J., says the action may be maintained " if the estate is, *in fact*, insolvent." A mere representation, then, is not enough. In the same case it was held that the documentary evidence from the probate office is the only proper evidence of insolvency. Here we have no other, no admission as in that case. From the probate office we have the inventory of the appraisers, the representation of insolvency, the appointment and return of the commissioners to adjudicate upon the several claims presented. We have also the proper evidence of an appeal from the allowance of the only two claims which were allowed and so far as appears neither of those appeals have as yet been disposed of. There have then been no debts proved against the estate and of course no certainty that any ever will be. We have no decree of insolvency from the court for in the present state of the case there could be none. Upon the appointment of commissioners it was decreed that the estate was apparently insolvent.

Further, from the evidence in this case it is apparent that the court here under any circumstances could not furnish the proper, or any evidence of the actual insolvency of this estate. The evidence in the case leaves no doubt that the intestate died in New Brusnwick and that at the time of his death his domicil was there. That was therefore the place where the principal administration should be granted and where we should look to ascertain the real condition of his affairs. The judge of probate here had a right to appoint an administrator who could and should administer such property and pay such debts as might be found here. It does not appear whether any administration has been had under the foreign government but until it shall be had

or it is in some proper way shown that there are no assets there, there is no way perceived in which it can be shown that the estate is really insolvent. The court here may so far as this jurisdiction goes show that the estate here is insufficient to pay the creditors here and for the purpose of paying debts here may authorize the sale of the real estate, as in *Fowle* v. *Coe*, 63 Maine, 245. It may even furnish the proof that the estate is insolvent here, but that will not show it insolvent there, or as a whole. We do not mean to say that the administrator must look the world over to discover assets, but he is bound to know the last domicil of his intestate, the place where his assets are presumed to be and where the principal administration should be and if he would sustain an action of waste against the heir, be prepared to show, what the statute requires, an actual insolvency. The duties of administrators of the same estate in different localities, especially in their relations to each other may be found in the following cases. *Fay* v. *Haven*, 3 Met. 109 ; *Livermore* v. *Haven*, 23 Pick. 116 ; *Dawes* v. *Head*, 3 Pick. 128, 143 ; *Boston* v. *Boylston*, 2 Mass. 384 ; *Davis* v. *Estey*, 8 Pick. 475 ; and many others of the like kind. The necessary inference from the principles enunciated in these cases, is that an estate cannot be known to be insolvent unless it so appears at the last domicil of the intestate, and if as held in *Bates* v. *Avery*, *supra*, it is to be proved from the records of the court, it would seem necessary that there should first be an administration there. As held in *Livermore* v. *Haven*, *supra*, the heir is not to be deprived of his inheritance until the general assets are exhausted ; and the waste in question, is as much the inheritance of the heir as the land from which it was taken.

We are not unmindful of the fact that the letters of administration in this case, represent the intestate as late of Calais, in the county of Washington ; nor do we overlook R. S., c. 63, § 7, in which it is provided that "the jurisdiction assumed in any case, except in cases of fraud, so far as it depends upon the residence of any person, . . . shall not be contested in any proceeding whatever, except on an appeal from the probate court in the original case, or when the want of jurisdiction appears on

the same record;" or the case of *Record* v. *Howard*, 58 Maine, 225, the soundness of which we do not question. But this action is not a proceeding in the probate court, nor will it be made any part of the record of that court, or in any way interfere with the jurisdiction which it has assumed. It may still go on and settle the estate. But because it has assumed jurisdiction, does not change the fact which is fully proved as to the domicil of the intestate, or its effect upon the liability of the defendant, or change into assets that which would otherwise not be such, or relieve the burden of proof which rests and must rest upon the plaintiff wherever the estate is settled.

Another fatal objection to the maintenance of this action is that no trespass or waste has been proved. Since the statute, as well as before, as held in *Kimball* v. *Sumner*, 62 Maine, 305, the heir, or devisee, is entitled to the rents and profits of the real estate of the testator or intestate, whether insolvent or otherwise, until it is sold for the payment of the debts, and for this reason he is entitled to the immediate possession, to the entire exclusion of the executor or administrator. The statute gives no definition of the waste intended, except as found in R. S., c. 95, § 12, which applies only to waste committed after a representation of insolvency, and to improved, rather than wild lands; such as have buildings upon them and those in occupation have occasion to cut wood and lumber for fuel and repairs. We must, therefore, resort to the common law as understood in this state, for the meaning of the term waste as used in this statute, as applied to wild lands.

The statute uses the words "trespass or waste." But trespass must be used as nearly or quite synonymous with waste, for under the principles above stated and settled in *Kimball* v. *Sumner*, *supra*, no act upon land so situated would be trespass, unless it resulted in a permanent injury to the freehold. The meaning must therefore depend somewhat upon the nature of the land to which it is applied. That which would be waste upon improved land, or woodland used in connection with improved land, might not be so upon wild, or such as is used exclusively for the lumber which it produces. The land here in question

was occupied for the latter purpose, and the only income which could be obtained from it, would be the value of the lumber taken. Much of the land in this state is kept for that purpose. This may be stripped or wasted, but there is a use of it by which profit may be obtained, without either strip or waste. There is a natural growth, a liability to fire or wind by which the timber may become a burden to the land, so that a removal would be a benefit rather than an injury. Certainly it can not be that the legislature intended that the heir should wait twenty years, the time in which an administrator might be appointed, before he could remove such timber, lest he might be liable for waste. Further than this, something must be left to the judgment, fairly and honestly exercised, as to what timber, dead or living, should be removed consistently with a careful and prudent use of the land, keeping in view its value for future production, as well as a present income. These views are sustained by *Drown* v. *Smith*, 52 Maine, 142, and cases cited, approved with considerable emphasis in *Abbott.* v. *Holway*, 72 Maine, 308. If then, the defendant used this land in the application of these principles as an owner of common care and prudence would use his own, we think he would not be guilty of waste. He would be receiving that, and only that, to which the heir would be entitled.

Applying these principles to the testimony and we find no evidence of waste. It cannot be in taking off the down lumber, for that was no injury to the realty; nor in cutting that which had been burned for that, as the evidence shows would soon have become worthless. Nor does it appear that the cutting of that portion which was green, was not, from its interference with other and younger growth, or from its own condition, or for some other reason, an act of prudence, and not such a permanent injury to the freehold as would amount to trespass or waste. There is, in fact, no evidence as to the condition of the land at the decease of the intestate, or at any time since, before or after, the cutting complained of, nothing to show whether any injury has been done.

The action can not be maintained upon the second count in the writ, for it does not appear that the intestate ever owned the

down lumber, except as a part of the realty. It would, therefore, belong to the heir, unless the cutting of it was waste, and in that case, the liability would be for the cutting, for which no claim is made upon this defendant.

*Judgment for defendant.*

PETERS, C. J., WALTON, VIRGIN, EMERY and FOSTER, JJ., concurred.